UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| FIDLAR ACQUISITION CO., d/b/a ) <br> FIDLAR TECHNOLOGIES, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> FIRST AMERICAN DATA TREE LLC, ) <br> ) <br> Defendant/ ) <br> Third Party Plaintiff, ) <br> v. ) <br> ) <br> MICHAEL COSTELLO, in his official ) <br> capacity as the St. Clair County, Illinois ) <br> Recorder of Deeds, ) <br> ) <br> Third Party Defendant. ) | Case No. 4:12-cv-04099-SLD-JEH |

## ORDER

On June 18, 2013, First American Data Tree LLC ("Data Tree") filed a three-count Third Party Complaint, ECF No. 24, against Michael Costello, in his official capacity as the Recorder of Deeds for St. Clair County, Illinois ("the Recorder"). The Recorder contracts with Fidlar Technologies ("Fidlar") to provide electronic records in bulk or compiled form, and Data Tree collects electronic real estate records from the Recorder using Fidlar's software services. Fidlar claims that Data Tree incurred a bill of nearly half a million dollars and refuses to pay it. Data Tree alleges that the bill is invalid because the Recorder's arrangement with Fidlar violates the Illinois Freedom of Information Act ("FOIA"), the Illinois Counties Code, and federal antitrust law. The Recorder moves to dismiss Count I (FOIA) of the Third Party Complaint under Federal Rules of

1

Civil Procedure 12(b)(1) and 12(b)(6), and Count III (federal antitrust) under Rule 12(b)(6), ECF No. 36. For the reasons set forth below, the Court DENIES the Recorder's Motion to Dismiss.

**Background**

At the motion to dismiss stage, well-pleaded facts alleged in the complaint are taken as true and all inferences are drawn in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Accordingly, the Court rests its decision on the following factual allegations:

Data Tree supplies electronic real property records and documents to its customers through its online electronic databases. In order to maintain and update its databases, Data Tree requests electronic copies of real property records, in bulk or compiled forms, from county entities across the country, like the Recorder. The Recorder disseminates its public records through Fidlar's programs, Tapestry and Laredo. The Laredo program offers access to public records in bulk or compiled form for a monthly fee. The Tapestry program charges a user for each search of public records ($5.95 per search) and for each page the user prints ($0.50 per page).

The Recorder contracted with Fidlar to be the exclusive and sole provider of its electronic public records in bulk or compiled form. The Recorder does not provide the records in electronic bulk or compiled form other than by and through Fidlar. From time to time, the Recorder, individually or by and through Fidlar, has restricted use of the public records by watermarking or otherwise defacing the public records copies as compared to the originals, and by placing language in the access agreements that limits the requester's use of the records.

On February 15, 2012, Data Tree and the Recorder entered into an agreement whereby the Recorder granted Data Tree electronic access to its public records through Fidlar's Laredo program (the "Laredo Agreement"). Under the Laredo Agreement, Data Tree agreed to pay $400 per month

to the Recorder for unlimited access to its public records. In March 2012, Data Tree inadvertently used Tapestry, instead of Laredo, to search the Recorder's public records. On behalf of the Recorder, Fidlar charged Data Tree $417,942.25 for those searches.

## DISCUSSION

### I. Rule 12(b)(1)

By moving to dismiss Count I under Federal Rule of Civil Procedure 12(b)(1), the Recorder is asserting that this Court lacks subject matter jurisdiction over Data Tree's claim. In particular, the Recorder asserts that (1) Data Tree does not have standing to bring its FOIA claim, and (2) Data Tree has not exhausted its administrative remedies under the FOIA. Mem. in Supp. Mot. Dismiss 3–5, ECF No. 37.

#### A. Standing

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (quoting *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999)). "Article III of the United States Constitution limits the jurisdiction of the federal courts to actual cases and controversies . . . [and] standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Schirmer v. Nagode*, 621 F.3d 581, 584 (7th Cir. 2010) (citations omitted).

The Recorder offers no support for its contention that a plaintiff only has standing to bring a FOIA claim if he has "made a formal request for public documents to a public entity." *See* Mem. in Supp. Mot. Dismiss 3. Section 11(a) of the FOIA allows that "[a]ny person denied access to inspect or copy any public record by a public body may file suit for injunctive or declaratory relief."

3

5 ILCS 140/11(a). A denial of *access*, not a denial of one's specific request, provides standing to sue under the FOIA. Furthermore, "[t]he imposition of a fee not consistent with subsections (6)(a) and (b) of this Act constitutes a denial of access to public records for the purposes of judicial review." 5 ILCS 140/6(d). Therefore, if a public body imposes a fee that is not consistent with its authority to charge fees under the FOIA, the party on whom the fee is imposed has standing to sue. Data Tree alleges that Fidlar, on the Recorder's behalf, charged it fees far exceeding those authorized under the FOIA for the Recorder's public records.[1] Compl. ¶¶ 37–42, ECF No. 24. Data Tree, therefore, has standing.

### B. Administrative Remedies Exhaustion

Like the Recorder's argument regarding standing, its argument that Data Tree has not exhausted its administrative remedies relies on a mistaken reading of the FOIA. As established above, "[t]he imposition of a fee not consistent with subsections (6)(a) and (b) of this Act constitutes a denial of access to public records for the purposes of judicial review," 5 ILCS 140/6(d), and "[a]ny person denied access to inspect or copy any public record by a public body may file suit for injunctive or declaratory relief," 5 ILCS 140/11(a). No intervening administrative review is required. *See, e.g.*, *Fagel v. Dep't of Transp.*, 991 N.E.2d 365, 370 (Ill. App. Ct. 2013) ("[S]ection 11 of FOIA permits any person, such as Fagel here, who is denied access by a public body to inspect or copy any

---

[1] A challenge to standing may be either facial or factual. *See Apex Digital, Inc. v. Sears Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). A factual challenge contends that the complaint is formally sufficient but points to external facts that defeat standing; in contrast, a facial challenge attacks the sufficiency of the allegations as to standing in the complaint. *Id.* In considering a factual attack, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* at 444. Here, the Recorder facially challenged Data Tree's standing, so the Court confines its review to the sufficiency of Data Tree's allegations and does not examine any external evidence, such as the exhibit Data Tree attached to its memorandum, Mem. in Resp. Mot. Dismiss Ex. A, ECF No. 40.

4

public record, to file an action for injunctive or declaratory relief in the circuit court."). The Recorder does not specify what administrative remedies Data Tree should have sought, or what procedures it should have followed to exhaust them. Rather, the Recorder offers a single, out-of-context quote from the FOIA to support its claim that Data Tree did not exhaust its administrative remedies: "Any person making a request for public records shall be deemed to have exhausted his or her administrative remedies with respect to that request if the public body fails to act within the time periods provided in Section 3 of this Act." Mem. in Supp. Mot. Dismiss 4 (quoting 5 ILCS 140/9(c)). This subsection does not create a requirement that a requester seek administrative review of a denied request; it simply describes a way for those remedies to be deemed exhausted if the denial is not prompt. Therefore, the Court does not find that Data Tree failed to exhaust its administrative remedies.

## II. Rule 12(b)(6)

The Federal Rules of Civil Procedure require a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Seventh Circuit has identified the practical requirements of *Twombly* and *Iqbal* for federal pleading:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts

5

should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). In general, a "plaintiff is not required to plead facts or legal theories or cases or statutes, but merely to describe his claim briefly and simply." *Shah v. Inter-Cont'l Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002). Likewise, a plaintiff is not required to "set forth explicitly his theory of the case." *Riemer v. Illinois Dep't of Transp.*, 148 F.3d 800, 804 (7th Cir. 1998).

### A. Count I

#### 1. Request for records

In moving to dismiss Count I for failure to state a claim under Rule 12(b)(6), the Recorder once again argues that "[i]n order to bring an action for an alleged violation of the Illinois FOIA, the Plaintiff must have made a formal request for public documents to a public entity." Mem. in Supp. Mot. Dismiss 3. As explained above, Section 11(a) of the FOIA allows that "[a]ny person denied access to inspect or copy any public record by a public body may file suit for injunctive or declaratory relief." 5 ILCS 140/11(a). In other words, a party only needs to allege a denial of access to state a claim. Furthermore, "[t]he imposition of a fee not consistent with subsections (6)(a) and (b) of this Act constitutes a denial of access to public records for the purposes of judicial review." 5 ILCS 140/6(d). Therefore, by alleging that it was charged fees in excess of those authorized by the FOIA, Data Tree has alleged a denial of access and has stated a claim.

Moreover, Data Tree has alleged a request, Compl. ¶ 38; the Recorder's definition is simply much narrower than the FOIA's. As an initial matter, the word "formal" never appears in the FOIA. The Recorder is correct that Section 3, subsection (c), states: "Requests for inspection or copies shall

be made in writing and directed to the public body." 5 ILCS 140/3(c). It continues, however: "Written requests may be submitted to a public body via personal delivery, mail, telefax, or other means available to the public body." *Id.* Moreover, "[a] public body may honor oral requests for inspection or copying," and "[a] public body may not require that a request be submitted on a standard form . . . ." *Id.* The FOIA is to be liberally construed, particularly in the realm of technological advances. Section 1 of the Act states:

> The General Assembly further recognizes that technology may advance at a rate that outpaces its ability to address those advances legislatively. To the extent that this Act may not expressly apply to those technological advances, this Act should nonetheless be interpreted to further the declared policy of this Act that public records shall be made available upon request except when denial of access furthers the public policy underlying a specific exemption.

5 ILCS 140/1. Data Tree argues, and the Court agrees, that "other means available to the public body" is broad enough to include the Recorder's alleged arrangement with Fidlar—and Fidlar's individual subscribers, like Data Tree—to provide its public records electronically.

## 2. The Illinois Counties Code does not "preempt" the FOIA

The Recorder's final argument to dismiss Count I is that the Illinois Counties Code, 55 ILCS 5/5-106.1(c), is "more relevant than the FOIA," and so "preempts" it. As Data Tree points out, this argument rests on outdated case law. Mem. in Resp. Mot. Dismiss 6, ECF No. 40.

The relevant section of the Illinois Counties Code states, in its entirety:

> (a) Any county may provide Internet access to public records maintained in electronic form. This access shall be provided at no charge to the public. Any county that provides public Internet access to records maintained in electronic form may also enter into a contractual arrangement for the dissemination of the same electronic data in bulk or compiled form.
> (b) For the purposes of this Section, "electronic data in bulk form" is defined as all, or a significant subset, of any records to which the public has free Internet access, as is and without modification or compilation; and "electronic data in compiled form" is defined as any records to which the public has free Internet access but that has been

specifically selected, aggregated, or manipulated and is not maintained or used in the county's regular course of business.
(c) If, but only if, a county provides free Internet access to public records maintained in electronic form, the county may charge a fee for the dissemination of the electronic data in bulk or compiled form, but the fee may not exceed 110% of the actual cost, if any, of providing the electronic data in bulk or compiled form.
The fee must be paid to the county treasurer and deposited into a fund designated as the County Automation Fund; except that in counties with a population exceeding 3,000,000, the fee shall be paid into a fund designated as the Recorder's Automation Fund.
(d) The county must make available for public inspection and copying an itemization of the actual cost, if any, of providing electronic data in bulk or compiled form, including any and all supporting documents. The county is prohibited from granting to any person or entity, whether by contract, license, or otherwise, the exclusive right to access and disseminate any public record.

55 ILCS 5/5-1106.1.

The Recorder relies on *Sage Information Services v. King*, 910 N.E.2d 1180, 1186 (Ill. App. Ct. 2009), in which the Appellate Court of Illinois held that the Illinois Property Tax Code allowed fees for electronic records above those authorized by Section 6 of the FOIA because the Property Tax Code fee provision was more specific. Central to that court's reasoning was the reference in Section 6 to other statutes: "unless otherwise provided by State statute." *King*, 910 N.E.2d at 1185. Section 6 of the FOIA was amended after the *King* decision was rendered, however, and that language is now gone. 2009 Ill. Legis. Serv. P.A. 96-542 (S.B. 189) (West); *Sage Info. Servs. v. Humm*, 977 N.E.2d 895, 900 (Ill. App. Ct. 2012). "By its own terms, the current version of section 6 of the FOIA does not allow a fee in excess of the cost of the electronic medium for the reproduction of electronic records unless another statute expressly provides that the fees for producing paper records also apply to electronic copies." *Humm*, 977 N.E.2d at 900. The Illinois Counties Code does not so provide; it states that access to "public records maintained in electronic form . . . shall be provided at no charge to the public," and if the county provides free access, it "may charge a fee for the

8

dissemination of the electronic data in bulk or compiled form, but the fee may not exceed 110% of the actual cost, if any, of providing the electronic data in bulk or compiled form." 55 ILCS 5/5-1106.1(a), (c). Therefore, the Court rejects the Recorder's argument that the Illinois Counties Code "preempts" the FOIA, and declines to dismiss Count I.

### B. Count III

#### 1. Sufficient factual allegations

The Recorder argues that Data Tree fails to state a claim in Count III of its complaint because "the Third Party Defendant is left to guess exactly what section of the Sherman or Clayton Act is allegedly being violated." Mem. in Supp. Mot. Dismiss 6. But plaintiffs need not plead legal theories or cases or statutes, so long as they describe their claims briefly and simply. *Shah*, 314 F.3d at 282 (7th Cir. 2002). Failure to specify the specific sections of the Sherman and Clayton Acts is therefore not fatal to Data Tree's antitrust claim. As described below, the Court finds that Data Tree has sufficiently stated a claim under Section 1 of the Sherman Antitrust Act.

"[A] plaintiff must prove three elements to succeed under § 1 of the Sherman Act: (1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in a relevant market; and (3) an accompanying injury." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012). As to element one, Data Tree alleges a contract between the Recorder and Fidlar. Regarding element two, the contract gives Fidlar the exclusive right to disseminate the Recorder's records in electronic bulk and compiled formats, and the records are not available in that format by any other means, according to Data Tree. Therefore, it is reasonable to infer that all competition is eliminated in the first-sale market for that format, so Data Tree has sufficiently stated an unreasonable restraint of trade. As to the third element, Data Tree alleges that its cost to access

the records is higher than it would be absent this exclusive contract. Taking these facts as true, and drawing all reasonable inferences in favor of Data Tree, the Court concludes the Data Tree has alleged sufficient facts to support each of the three elements of a Section 1 claim. *See Tamayo*, 526 F.3d at 1081. To the extent Data Tree is seeking relief on other grounds, the Court grants Data Tree leave to amend its complaint to allege those claims.

### 2. State Action Immunity

The Recorder asserts that it is immune from antitrust liability under the state action exemption, first described in *Parker v. Brown*, 317 U.S. 341 (1943). In *Parker*, the Court held that because "nothing in the language of the Sherman Act or in its history suggested that Congress intended to restrict the sovereign capacity of the States to regulate their economies, the Act should not be read to bar States from imposing market restraints as an act of government." *F.T.C. v. Phoebe Putney Health Sys., Inc.*, 133 S. Ct. 1003, 1010 (2013) (internal quotations omitted) (citing *Parker*, 317 U.S. at 350, 352). In general, "[s]tate-action immunity is disfavored." *Id* at 1010.

Because this case involves allegedly anticompetitive conduct undertaken by a substate governmental entity, and municipalities and other political subdivisions are not themselves sovereign, state-action immunity under *Parker* does not apply to the Recorder directly. *See id.* But, "substate governmental entities do receive immunity from antitrust scrutiny when they act 'pursuant to state policy to displace competition with regulation or monopoly public service.'" *Id.* (quoting *Lafayette v. Louisiana Power Light, Co.*, 435 U.S. 389, 413 (1978) (plurality opinion). The purpose of this rule is to "preserve[] to the States their freedom . . . to use their municipalities to administer state regulatory policies free of the inhibitions of the federal antitrust laws without at the same time permitting purely parochial interests to disrupt the Nation's free-market goals." *Id.* at 1011.

Therefore, "immunity will only attach to the activities of local governmental entities if they are undertaken pursuant to a 'clearly articulated and affirmatively expressed' state policy to displace competition." *Id.* (quoting *Community Commc'ns Co. v. Boulder*, 455 U.S. 40, 52 (1982)).[2] Neither a statute nor its legislative history need expressly state that "the legislature intends for the delegated action to have anticompetitive effects"; the test is whether "the anticompetitive effect was the foreseeable result of what the State authorized." *Id.*

Here, the Recorder's authority to enter into a contract with Fidlar to be its exclusive provider of records in electronic format is murky, at best, so the Court declines to apply state action doctrine immunity at the motion-to-dismiss stage. The Illinois Counties Code states that "[a]ny county that provides public Internet access to records maintained in electronic form may also enter into a contractual arrangement for the dissemination of the same electronic data in bulk or compiled form." 55 ILCS 5/5-1106.1(a). It also states, however, that "[t]he county is prohibited from granting to any person or entity, whether by contract, license, or otherwise, the exclusive right to access and disseminate any public record." 55 ILCS 5/5-1106.1(d). Read together, these two sections create ambiguity as to whether a county may grant an exclusive right to disseminate public records in a particular format, so long as the right is not to disseminate a given public record in all its forms. But this ambiguity also prevents the Court from finding that the alleged agreement between the Recorder and Fidlar was "the foreseeable result of what the State authorized." *See Phoebe*, 133 S. Ct. at 1011. The Court therefore declines to dismiss Data Tree's antitrust claims on the basis of state action doctrine immunity.

---

[2] Government entities, unlike private parties, are not subject to an "active state supervision requirement." *See id.*

11

### 3. Own products

The Recorder's final argument to dismiss Data Tree's antitrust claims is that "an entity cannot be said to have a monopoly over its own product, and the public records of St. Clair County, Illinois, are the products of St. Clair County, Illinois." Because this argument appears to be a defense to Data Tree's claims, and does not go to their sufficiency, the Court declines to consider it. Generally, a court will not dismiss a complaint because of an affirmative defense raised by the defendant in its motion to dismiss. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Such a dismissal under Rule 12(b)(6) would be inappropriate because "[c]omplaints need not contain any information about defenses and may not be dismissed for that omission." *Id.* "Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Id.* Whether the public records are the Recorder's own products does not go to the sufficiency of Data Tree's antitrust claims, and is not raised in the complaint, so it is an inappropriate basis for a Rule 12(b)(6) motion.

## CONCLUSION

For the foregoing reasons, the Third Party Defendant's Motion to Dismiss, ECF No. 36, is DENIED.

Entered this 28th day of March, 2014.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
